UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 25-cr-00773 |
| v. ) | |
| ) | Hon. Keri L. Holleb Hotaling |
| LUIS URIBE ) | |

### MEMORANDUM OPINION AND ORDER

This matter came before the Court on the government's motion to detain defendant Luis Uribe pending trial in this district pursuant to 18 U.S.C. § 3142(e)(3)(B). On December 4, 2025, a federal grand jury returned an eleven-count indictment against Uribe which included violations of 18 U.S.C. § 242 and 18 U.S.C. § 924(c)(1)(A)(ii). [*See* Dkt. 1.] At Uribe's initial appearance and arraignment on December 9, 2025, the government orally moved for pretrial detention, arguing that Uribe was a flight risk and posed a threat to the community. [*See* Dkt. 6.] The government filed a written Memorandum in Support of Detention [Dkt. 5] and Uribe filed a Motion in Support of Pretrial Release. [Dkt. 12.] The Court held a detention hearing on December 15, 2025, and orally granted the government's motion for detention. [Dkt. 13.] This Memorandum Opinion and Order further elaborates on the Court's oral rulings at that hearing.

### BACKGROUND

Defendant Uribe has been employed by the federal government since 2009, as a United States Customs and Border Protection ("CBP") officer. As a CBP officer, Uribe has certain law enforcement powers throughout Illinois and the United States and is authorized to carry his firearm and badge while off duty. [Dkt. 5 at 2.] The government alleges that, on six separate occasions throughout 2022, defendant forced his way into various hotel rooms and either robbed or attempted to sexually assault and/or sexually assaulted, at least four different women. Defendant is alleged to have used his service weapon, badge or credentials during the assaults, forced the victims to perform

1

oral sex, submit to vaginal sex without consent, and rob them of any cash in their possession. (*Id.* at 1.) If convicted, Uribe faces a potential sentence of up to life imprisonment on Counts 1, 3, 6, 7, and 10 which charge violations of 18 U.S.C. § 242 (aggravated sexual abuse or attempted aggravated sexual abuse). Count 8, which charges 18 U.S.C. § 924(c)(1(A)(ii) (knowingly brandishing a firearm during and in relation to a crime of violence), carries a mandatory minimum consecutive sentence of seven years' imprisonment, up to life imprisonment.

## LEGAL STANDARD

Pretrial detention is governed by the Bail Reform Act of 1984, codified at Title 18, United States Code, Section 3142. As a general matter, detention pending trial is warranted only if a court finds that no condition or combination of conditions will reasonably assure the appearance of such person as required as well as the safety of any other person and the community. 18 U.S.C. § 3142(f); *United States v. Portes*, 786 F.2d 758, 760 (7th Cir. 1985); *United States v. Wilks*, 15 F.4th 842, 846 (7th Cir. 2021). In assessing a defendant's risk of flight, the government bears the burden of proof by a preponderance of the evidence. *See Portes*, 786 F.2d at 765. In considering whether a defendant poses a threat of danger to the community, the government bears the burden of proof by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *see United States v. Salerno*, 481 U.S. 739, 751 (1987). To determine whether Uribe is a risk of flight and/or a danger to the community, the Court must consider: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Uribe retains a presumption of innocence and the Court's evaluation of these factors in no way modifies or limits this presumption. 18 U.S.C. § 3142(j).

### I. Uribe Failed to Rebut the Presumption of Detention

In this case, there is a rebuttable presumption that there are no conditions of release that will

reasonably assure both the appearance of the defendant and the safety of the community. This is because defendant has been charged with the offense of brandishing a firearm during and in relation to a crime of violence pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). *See* 18 U.S.C. § 3142(e)(3)(B). The presumption shifts the burden of production to the defendant, but not the burden of persuasion. *Portes*, 786 F.2d at 764. Here, the Court finds Uribe has sufficiently rebutted the presumption of detention as to risk of flight. As detailed in the Pretrial Services Report, Uribe has no criminal history, has steady employment as an CBP officer,[1] is a U.S. Marine veteran, has a stable living situation, has strong ties to the community, has family support, and has no pattern of past non-appearances (as of course would be true of anyone with no criminal history). Even though Uribe has dual citizenship in the United States and Mexico and has a U.S. passport, the Court could have easily required that defendant relinquish his passport as a condition of release. This evidence is sufficient to meet the burden of production and is sufficient to rebut the presumption as to risk of flight. However, the same cannot be said for danger to the community.

      Uribe specifically relies on the same considerations to attempt to rebut the presumption with respect to danger to the community. Other courts have found similar representations insufficient to rebut the presumption. For example, in *United States v. Mercedes*, 254 F.3d 433 (2d Cir. 2001), the Second Circuit reversed the district court's pre-trial release of three defendants who had been charged with a violent offense (conspiracy to commit armed robbery of a drug dealer), despite the fact that two of those defendants did not pose a flight risk because they had no criminal history, a strong record of employment, and substantial family support. *See also U.S. v. Abad*, 350 F.3d 793 (8th Cir. 2003) (reversing and vacating the district court's grant of pre-trial release despite defendant's lack of criminal history, family support and family's pledge of equity interest as surety

---

[1] At the detention hearing, Uribe's counsel confirmed that defendant was still employed by CBP.

3

given that the "nature of the crime charged-sexual activity with a minor-weighs heavily against release"); *United States v. King*, No. 24-cr-00153, 2024 WL 1410638 (N.D. IL Apr. 2, 2024) (detaining defendant based on defendant's danger to the community where defendant was charged with distributing child pornography, but did not pose a flight risk due to his lack of criminal history, steady employment, stable living situation and family support); *United States v. Boll*. No. 20-cr-190, 2021 WL 3022617 (E.D. Wisc. July 16, 2021) (finding detention appropriate after reopening a detention hearing given that defendant's "danger to the community demonstrated by the aggravated nature of the allegations" (which include child pornography and sexual assault of a minor) outweighed defendant's characteristics that weighed in her favor, namely her lack of criminal history, her prosocial life, and her family support). Here, just as in these cases, the Court finds Uribe has not rebutted the presumption of danger to the community with evidence which could serve to mitigate the Court's grave concerns regarding the danger he poses to the victims and women in general in the community, if he is released.

## II. The Section 3142(g) Factors Also Weigh in Favor of Detention

Alternatively, as described below, even if the presumption was rebutted, detention is still warranted under the Section 3142(g) factors.

### A. Nature and Circumstances of the Offense

The nature and circumstances of the offenses alleged in the eleven-count indictment are incredibly disturbing, involve the use of a firearm, as well as physical and sexual violence against multiple victims over a limited period of time in 2022. *See* 18 U.S.C. § 3142(g)(1). The indictment charges Uribe with the following:

### *Victim A*

In February 2022, defendant Uribe knocked on a hotel door in Schaumburg, Illinois and pushed his way into Victim A's hotel room where he displayed an ID card with his picture on it and

4

stated he was a police offer. Uribe forcibly threatened Victim A with fear that she would be subjected to death, or serious bodily injury, by pulling out a firearm and holding it to Victim A's head and then ordering Victim A to perform oral sex on him, without her consent. Uribe allegedly then pulled his penis out of his pants. Victim A begged and pleaded with defendant and offered him money, which he took, without further assaulting her. [*See* Dkt. 1 at Counts 1, 2; Dkt. 5 at 2-3.]

### Victim B

In February 2022, defendant Uribe knocked on a hotel door in Naperville, Illinois and forced his way into Victim B's room where he brandished a gun and badge and identified himself as police. Placing Victim B in fear that she would be subjected to death, or serious bodily injury, Uribe then demanded money, which Victim B supplied. The defendant then allegedly pulled down his pants, exposing his penis, and forced Victim B to perform oral sex without her consent. Victim B screamed for help and defendant Uribe hit her. When Victim B could sense that defendant was close to ejaculating, she pulled away. Defendant then allegedly became irate and grabbed Victim B's face, forced her mouth open and spit into it. Victim B subsequently moved to a different room at the same hotel in Naperville, where defendant, on a second occasion, forced his way into her room and robbed her.

Victim B then moved to a different hotel altogether. For a third time, defendant Uribe allegedly forced his way into Victim B's new hotel room at gunpoint. He demanded money, which Victim B provided. Defendant then demanded oral sex, and Victim B begged "no, no." Uribe then allegedly grabbed Victim B by her face, forced her mouth open, and again spit into her mouth. He next forced Victim B to take off her clothes and raped her. While Victim B was screaming, defendant hit her in the face. [*See* Dkt. 1 at Counts 3, 4, 5, and 6; Dkt. 5 at 3-4.]

### *Victim C*

On or about October 2, 2022, defendant Uribe knocked on a hotel door in Schaumburg, Illinois, and pushed his way into Victim C's hotel room where he displayed an ID card with his picture on it and brandished a gun, consistent with his government issued firearm. By force and threat, Victim C was placed in fear that she would be subjected to death, or serious bodily injury. Defendant demanded cash, which Victim C provided. Defendant then instructed Victim C to remove her clothing and forced Victim C to perform oral sex and vaginally raped her. When he was done, defendant Uribe fled the room. [*See* Dkt. 1 at Counts 7, 8, and 9; Dkt. 5 at 4-6.]

### *Victim D*

On or about October 9, 2022, defendant Uribe knocked on a hotel door in Schaumburg, Illinois, and pushed his way into Victim D's hotel room, pulled out a gun, and told Victim D he was police. Uribe went through Victim D's belongings and stole a quantity of cash. Uribe forcibly threatened Victim D in fear that she would be subjected to death, or serious bodily injury, when he pulled out a knife and ordered Victim D to remove her clothing. Victim D begged the defendant not to hurt her because she had children. Uribe then allegedly pulled out his penis and, as he was about to rape Victim D, there was a knock at the door. Defendant pulled up his pants and fled from the hotel. [*See* Dkt. 1 at Counts 10, 11; Dkt. 5 at 7.]

Due to the serious nature of defendant's alleged conduct, the Court finds that this factor weighs heavily in favor of detention.

### B. Weight of the Evidence

Next, the Court considers the weight of the evidence against Uribe, which is very strong.[2] 18 U.S.C. § 3142(g)(2). The evidence here, as proffered by the government, includes that multiple victims have provided information against defendant and that information is detailed and corroborated by other witnesses. For example, multiple victims described the appearance of Uribe's badge, which is consistent with a standard-issue CBP badge. [Dkt. 5 at 9.] A photograph of the defendant was taken at a restaurant in the northwest suburbs in 2022 by Witness A, which closely resembles the driver's license photograph of defendant. [*Id.* at 4-5.] This photograph was provided to law enforcement by Victims C & D. [*Id.* at 10.] The Federal Bureau of Investigation ("FBI") laboratory determined that defendant's DNA was found on bedding in Victim C's hotel room. The FBI and Department of Homeland Security, Office of Inspector General obtained travel and location information for defendant related to the incident involving Victim C, and information from Google associated with defendant's account. Location information showed that defendant left work at O'Hare and traveled west on I-90, and while on the highway he searched Google Maps for the hotel where Victim C was staying. Toll data was consistent with defendant committing the rape of Victim C. [*Id.* at 6-7, 9.] Accordingly, the weight of the evidence favors detention.

### C. Nature and Seriousness of Danger Posed by Release

Next, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(4). Defendant Uribe proposed to have his father serve as third-party custodian. Uribe maintains a close relationship with

---

[2] Defendant contends that "courts consider the weight of the evidence the 'least important' of the § 3142(g) factors," relying on *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). But *Gebro* has not been adopted by the Seventh Circuit and there certainly are cases where the weight of the evidence is dispositive on detention. *United States v. Calabrese*, 436 F. Supp. 2d 925, 927 (N.D. Ill. 2006) ("Moreover, it is difficult to see how this factor could always be less important than others. Where there is very strong evidence that a defendant was a serial rapist or killer, this factor alone might outweigh all other factors in determining whether detention is required to protect the community").

his father, claiming to have weekly contact with him. Despite this close familial relationship, it appears defendant concealed his alleged illegal activities from his entire family, including his father, for at least the last three years.

Most important, the Court is exceedingly concerned about the potential harm Uribe poses to the victims in this case and to women in the community in general, considering the very serious charges in the indictment. To potentially negate these concerns, the Court was urged to consider home incarceration with location monitoring. The fact that defendant is a former Marine and has been a federal law enforcement officer for sixteen years bolsters the Court's view that Uribe would not abide by this Court's conditions if he were to be released on bond.

It simply cannot be ignored that Uribe committed these alleged offenses after displaying his CBP badge, brandishing his CBP issued firearm, and claiming to be "police" while committing the alleged violent conduct. Other courts have found that law enforcement officers who are alleged to have committed sexual assaults pose a danger to the community. In *United States v. Ruiz*, No. 4L20-cr-00582-1, 2021 WL 1427804, at *4 (S.D. Tex. Apr. 15, 2021), the court detained a police officer who was charged with violating 18 U.S.C. § 242 and 18 U.S.C. § 924(c)(1)(A) (the same charges defendant faces here) for allegedly committing two sexual assaults while on duty. Specifically, the *Ruiz* court held:

> [G]iven the nature of the alleged underlying conduct, the danger posed to the victims and to the community by any subsequent similar act is severe….Likewise, to commit these types of acts – and again, for purposes here the weight of the evidence is strongly against him – he had to disregard and overcome specific legal training in addition to the usual moral and legal constraints against such conduct. It can't be assumed that his future good behavior is in any way assured.

*Id.* The Court finds *Ruiz* persuasive and on point. When asked to address *Ruiz* during the detention hearing, defense counsel neither distinguished it nor pointed to any federal case holding the opposite. *See also United States v. Torrence*, No. 1:22-cr-00207, Rec. Dkt. 18 (E.D. Cal. Aug. 16,

2022) (former police officer charged with committing multiple sexual assaults ordered detained where no condition or combination of conditions could reasonably assure the safety of any other person and the community). Thus, the Court finds that the nature and seriousness of the danger to the community, and particularly the significant danger to the victims and women in general, weighs heavily in favor of defendant's detention.

Finally, the Court notes that the history and characteristics of Uribe weigh in favor of release. *See* 18 U.S.C. § 3142(g)(3). Uribe has never been convicted of a crime, has strong community ties, and family support. But, when considered together with the other 3142(g) factors discussed above, the Court finds that the other three factors heavily outweigh this single factor. The Court hereby finds detention is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds that the presumption of detention applies, and even if it did not, the government has demonstrated by clear and convincing evidence that there are no conditions or combination of conditions for Uribe that can reasonably assure the safety of the community. Accordingly, the government's motion for detention pending trial pursuant to 18 U.S.C. § 3142(e) is granted and Uribe's Motion in Support of Pretrial Release [Dkt. 12] is denied. Defendant Uribe shall remain in custody pending further order of the Court.

**ENTERED: December 23, 2025**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge